The next matter on our calendar is Islamic Community Center versus City of Yonkers. Thank you. Good morning, Your Honor. May it please the court. My name is Omar Mohamedi, I'm appearing here on behalf of the Islamic Center. City of Yonkers issued a discretionary landmark designation as a pretext to curtail the existence of a mosque and colonial house. You need to tell us what use of the property has been prohibited by this designation. And you tell us nowhere in your papers what you cannot do because of this designation. Your Honor, because of designation, our client will not be able to make a renovation inside because the outside will affect the inside. Where is that in the record? Yeah, where is that in the papers? Also, that's in the paper in a way that's any renovation that would be outside. First- We're asking is where is that in the paper? Where is that in the record? So we can look at it. Sure, I do believe that we- It's the question of jurisdiction that the- This is the question of jurisdiction. And Your Honor, I think the question of jurisdiction is really related to the issue of having this court be able to decide the facial challenge as far as the- But it's not- The decision of the ordinance. Really an as applied challenge to you. That's the very nature of the challenge. You're saying as applied to us. But Your Honor- The economic center, this law is unconstitutional. Your Honor, we do believe that in Roman Catholic case, exactly that was exactly the same scenario where the ordinance was issued to prevent the Roman Catholic to issue the landmark designation. And in that case specifically, which we believe that the first circuit specifically stated that Roman Catholic found that the district court wrongfully interpreted plaintiff claim as a challenge to the historic district act. As applied ordinance, this was the wrong focus. The act delegates the municipalities the authority to create historic district using certain type of procedure and general criteria. This is exactly what- But you have not told us anywhere in your papers or to the district court what it is you want to do with this building that the landmark designation prohibited you from doing. That's the basis of the jurisdiction. That's why the court said I am without jurisdiction to consider this. You didn't explain the harm. But again, Your Honor, this circuit itself specifically stated when there is a first amendment violation. And that's when he says the Williamson test should not be applied in this case. Because, for instance, in Murphy case, this case specifically stated that's when there is injury. Immediate injury, which is the violation of first amendment right. Mr. Mohammed. Mohammadi, yes, yes. My problem with all of this is, and I may well be persuaded, but by the arguments that you would be making if you could show us in the record, which is all that we have to look at, what it is that your client is precluded from doing. There is a statement, I have it from your brief on page five. In approving the landmark designation, the city of Yonkers, and then you quote, unreasonably limited, close quote. ICCMW's religious assembly and structure in violation of 42 USC 2000, etc., which is our looper. But I don't see what I can look at as a person trying to decide your appeal. That backs up that conclusion. Your Honor, the fact- What is it that your client cannot do that is in the record in this case? You may well be able to put it in the record at some point in the future if you go through the right procedures, but I don't see it there. Your Honor, the fact that they will not be able to build or to renovate. Where is that? We don't see that. I do believe, if you have it- If there's something in the record that I've missed, I'm- Yeah, in the record, I believe it stated the fact that they could not build an Islamic center with its religious characteristic. That in itself is a violation of the First Amendment. But where do you tell us what it is you, sorry, you, your client, wants to do? Where's the design for- So the design that they were planning to file, by the way, they filed for renovation, and then right after when the application was made, this landmark designation obviously was issued. And that now- I'm not really aware of the timing of this, but what is it that you are trying, what is it that the center is trying to do that is stopped by this designation? The center was trying to create an Islamic center where they can pray. An Islamic center will have a characteristic of a religious institution, which is the First Amendment right. You're taking down the building that's there now and put up a new building? Is it that you wanted to renovate the building that's there? None of that is- We don't know. None of this is in the record. Originally, they wanted to renovate the building, and that's really what they're trying to do. Nevertheless, the intent of the city of Yonkers to prevent them to go further with the renovation, because they made an application, they're going to make a second application, where they will have a characteristic of an Islamic center, such as outside can be a dorm, can be a minaret. The fact that really it did not happen at the time does not mean that the violation of the First Amendment did not occur by the landmark designation. You were supposed to, after you got this designation, apply for a certificate of appropriateness, which you never did, is that correct? Yes, but your honor- That would have, once that was turned down, that would have at least told us what you want to do, that the designation stopped you from doing. We do not know that. This case is not over yet. We don't know that. But your honor, look at the first circuit, which is the Roman Catholic, is exactly the same scenario. Also, with respect to Temple Bonnet, which is the 11th circuit, where they were trying to renovate, and this ordinance was issued, which was discretionary, trying to prevent the religious institution to make the renovation. So- Does the Islamic Center want to renovate this building? Yes, your honor. Where is that in the record? How would we know that? It was an application that was made, and it was denied. It's not before us. We don't see the application in what is in front of us. It was made an application, and it was denied in the middle of denial. That's when the- Is there a plan, an architectural plan, or a sketch or a drawing- It was, yes, your honor. About what it is that the center would like to do. If I could see that, I'm speaking for myself only. If I could see that and say, yes, it was denied because this violates the historic designation, then we would get to the issues that I think you want us to address under the First Amendment. The harm that you suffered. Let me adjust this, your honors. The fact that it was an application made before the landmark designation. And that was the process that the client was trying to follow. Nevertheless, there was- But is that in the record here? I do believe it was in the record, yes. It is an application submitted building permit, application B15496. Where is that in the record, please? That's exhibit A565. And that's, you're in which document now, appendix volume two, page 565, is that it? Yes. Okay, bear with me. So where did this- Wait just one second. This is the one that says that you wanted to install a parking lot, HC ramp, and miscellaneous interior work? Is that the right document? I'm looking at the middle, which says work description. Work description, yes, your honor. And then what happened with this? So with this, what happened- In the record, what is there that tells us what happened to this application? This was denied. Where is that? Was that based on set off? This is the next page, 567? Right. Insufficient front lot width, insufficient side front yard, insufficient parking. That's right. That's the- That's the application that was denied. Okay, so now- But again- What does that have to do with the landmark status? Again, this is really what I like to address this issue, your honors. When this application was denied, in the middle of trying to apply for this application, when the client were trying to file a second application, this landmark designation came into existence, where it did not exist. Don't forget that, your honors, that this was a permitted use under the religious zoning, right? So there was nothing there to prevent clients to go forward with the application. When the city realized that this was purchased for, and the application was to be made for a religious institution, they rushed to establish this landmark ordinance to prevent the client to pursue without any burden and create more issues. It doesn't prevent you from pursuing, I suspect that whether it was a landmark or not, religious use or residential use, there would be certain requirements for the parking lot that doesn't relate to the landmark designation. Let me just say that I'm not unaware of the things that were said at public meetings that you recount in your papers, and they are very upsetting. I have to agree with you. But what you have to show us is how the landmark designation prohibited you from doing things to this building that you otherwise could do. And that's where the record doesn't tell us. Your honor, again, I will go back to the same scenario with the Roman Catholic and Temple Bonnet. It was similar scenario where they were trying to make an application. In the middle of that application, the landmark designation was issued to prevent them. That is actually an immediate injury under the Murphy case that this court has decided. You're not prohibited from doing anything to this building that you want to do. That's the difference. Again, the only- What are you prohibited from doing? What, from building this institution as a religious institution. Why? Because when you have the landmark designation, you're not going to be able to build this as a religious institution such as a mosque with a dome, with a minaret, if you have to do that. So you do want to change the building to make it a mosque with the various building accoutrements, architectural accoutrements that would obtain to a mosque, right? Yes, but again- So where have you told the city of Yonkers that that's what you're doing and asking for an exception? Again, this happened right in the middle of the application. No, no, where have you, so the answer is you have not done that yet. Again, the- Is the answer that you have not done that yet? The question is that we have not done that yet because we did not have- The answer to my question is you have not done that yet. I will say, if you have done that or had done that and show us that they are not making reasonable accommodations and applicable to the standard, then you would have, in my view, standing, or the case would be right for us to understand it and to decide it. This case is right for your honors to decide because it was a facial challenge to an ordinance, a landmark designation similar to the 11th Circuit to prevent and which would raise a First Amendment right challenge, which actually this court will- Our case, Murphy, which is binding on us, allows you to do that. I do believe so, and also the 11th Circuit and first- How do you read Murphy to allow us to do that? I read Murphy that there was an immediate injury and then nothing to further to define the injury. And there is nothing further to define the injury that the Islamic Center could do at the administrative level, because the landmark designation was final, was docketed, became a law. The mayor signed it into a law, which became an ordinance that will prevent the appellant to go forward, and it would be fertile for the appellant to go even further, because he would not be able to get this Islamic Center, which is a religious characteristic, because it was landmark in a way. And the landmark also, there is an issue with the landmarking, is that- You filed a certificate of appropriateness asking for exceptions to the landmark designation. Is that correct? No, we did not, but we do not believe that- That you have to- Appellant need to do that at this point, because it was a violation of a First Amendment right, which is a prima facie issue that happened, as far as- This argument is long expired, but you have three minutes for rebuttal. We'll hear from the city of Yonkers. Please. Good morning, may it please the court. Patrick Knowles with the firm Ferrick, Lynch, McCartney, and Nugent for the appellees, with the exception of former Councilman Burroughs. Your Honor, to start and to address the point directed towards opposing counsel with regard to where in the record it says that anything about this historical designation would infect the interior, I would just point you to A161, where the plaintiff's attorney, during a hearing, specifically said, with respect to the interior portions of the premises, the owner has the ability to perform whatever renovation work that it chooses with respect to those interior portions. At this point- Is that correct? Yes, the historical designation on this property does not affect anything. It does affect the exterior, though, doesn't it? Yes, Your Honor, it affects the exterior. It does not affect the plaintiff's right to pray within its walls. It does not affect its pre-purchase permitted use with supplemental requirements to have a house of worship. All it does is affect the exterior portion of this property. And for that reason, the record- But if they, if as counsel, Mr. Muhammad, has indicated they need to, as part of making this a place of worship, do some exterior renovation, they would have to apply for an exception, right? Yes, Your Honor, through the process of a certificate of appropriation. Appropriateness. Appropriateness, my apologies. And with respect to this case- If that were turned down, then they might have an action to come to our court. They may, Your Honor. There's also another means through the code that they can seek a economic hardship, which effectively serves as an appeal of that certificate denial. But I think that we are ways off. And I would just note also that with respect to Murphy, this case is the textbook example for why Murphy is the law in the Second Circuit. We don't have a developed record. We don't know the effect of this designation. And at this point, we don't even know what Plaintiff seeks to do with the exterior of the building. What we do know is nothing about the historical designation prevents them from praying, from modifying the internal use of their property. But counsel, you understand that this group of people feels that the designation arose after they declared that they wanted to build a mosque. And there was a certain amount of hostility and discrimination toward this group of people by the neighbors. You understand that, correct? Yes, Your Honor. I understand it, but I would submit that a review of the full record indicates that the preservation board who received this application, the board did not start. They received it from the people. They have to consider applications that come before it. In this instance, they did. And they went through a very extensive hearing. During those hearings, people expressed opinions, but I believe that those opinions were few and far between, and most certainly not accepted by the board, and actually rejected. And when the board received those opinions, they put it back on track for what this was about. And it was about historical designation and going through that process. We didn't have the standing concern, though, that might raise factual questions, what you've just indicated, because we would be obliged to look at the record in the light most favorable to Plankett. So, but for the standing question, are you suggesting that he doesn't, that these facts aren't disputed? No, Your Honor, I believe they are disputed, number one. And number two, I would submit that the reason that the members of this community chat gave for initiating this application had nothing to do with the religion or who the property owner was, but rather had to do with the arise circumstance of the building being altered. There were, the prior property- The plaintiff suggests that's not the real reason, and has deduced at least some evidence to support his argument. Your Honor, I don't believe we have to get to that. I believe it's still at the jurisdiction. Either we have a standing problem here, or we don't. I mean, if we don't, I don't understand you to be arguing some other basis for not taking this forward, or am I misunderstanding? No, Your Honor, this is strictly a ripeness issue, and we believe Murphy controls. Murphy is very clear, and that this case is why, because when we look at this record, as Your Honor has correctly pointed out, we do not know what work they want to do on this property. And to also- As I understand it, the reason it was designated, it's a particular form of domestic architecture, right? Yes, Your Honor. So, to the extent they want to do anything that designates it as a religious institution, most obviously, as counsel is suggesting, putting a minaret on top to designate it as a Muslim house of worship. You would likely reject that, and then the question is whether you would also reject a crucifix, whether you would also reject a Star of David, in short, that it's not a bias against Muslims. Is that where this might be going? Your Honor, I don't think we can make that assumption that they would reject anything, number one. And number two, if we look at the record on what's before this court now, they've only suggested minimal changes. It's only until they brought this action that suddenly, and on this appeal specifically, that there's these Islamic characteristics that we do not know about. And you're referring now to the document that counsel pointed us to that mostly referred to changes in the parking lot and things like that? One is that example, but also, during the proceedings, during the hearings before the landmark board, there was numerous statements on the record by the plaintiff, the plaintiff's former attorney, who is not their current attorney, who said, we're just looking to make minimal changes. That's it. A door, a window, there was nothing with respect to altering the external part of the house, and with that- Those changes be precluded by the designation? It would go before the board, and it depends on what the extent of the change is. I can't stand up here and say how the board's going to decide an independent board. I don't know. I think it needs to go before the board, before that determination can ever even- Well, you know what historic designation means, because you're, and I don't, as certainly as well as you do, or as well as you should as counsel for the city of Yonkers. Would an historic designation preclude exterior changes? No, no, it would, to clarify, with respect to exterior changes, the landmark designation does not even come to play unless they're material external changes, number one. And number two, it would depend on the board's determination on if it had a significant effect, but I can't make that assumption. I don't even know what their changes would be. Would a window? I can't surmise. All of us who deal with historic designations in the city of New York know you can't change your windows because landmarks won't give you approval of it. So the question is, you don't know either way. You're not in a position to tell us that they can change the windows. That might alter the characteristics of the historic architecture. Exactly, Your Honor. I don't think you're in any position to tell us that they could make changes. I completely agree, Your Honor. That would be before the board and when the facts developed. Right now, it's underdeveloped, the record. But the fact is that now that it has an historic designation, it is a board that can say whether it gets to be changed or not. Which was a state that it was not in before it had the historic designation. Your Honor, but before the historical designation, the plaintiff still had to go through the land use process with respect to variances and other building permits. When opposing counsel referred to the building permit that was submitted after the application. Yes, they knew on its face that that application was going to be denied. They knew they needed variances for what they sought. And that's in the record as well, in the hearings, they recognize that. So if I just may turn to the facial challenge aspect. A plain reading of this complaint, I would submit that he hasn't alleged at all how this is a facially unconstitutional or illegal. As this court well knows, facial concerns, the text of the statute, not the application of particular circumstances here, it's particular circumstances. So I would just submit to the court that as the district court found that that argument be dispensed with. And should the court have no further questions, thank you. Thank you, counsel. Mr. Mohammadi, you've reserved three minutes for rebuttal. Your Honor, so how do you expect the Islamic Center to go back to the planning board to apply again? When the planning board itself stated that there were already three other places of worship trying to limit the worship, the places of worship, and the landmark would not place any impact or impact on the community, so the Islamic Center would have to go before the planning board again. And the planning board suggested to the landmark preservation board that this should be landmark. And they were specifically stating that there were already enough houses of worship. Didn't they say it in the sense that there are already religious organizations and in this neighborhood, and therefore this wouldn't change the character? Wasn't that the sense in which they raised it? I beg to differ, Your Honors. They were trying to say that there are enough religious institutions. By the way, in the column there was not a single mosque. And that's the intent. The minute that the board realized that this application is going to be for the religious establishment, for a house of worship, they rushed to get this landmark passed. And it was very clear, and the surrounding circumstances, as clearly suggested in the record, was clearly this was a campaign against the establishment of an Islamic Center. Council, if you're correct, you have to show us how you were harmed, and you haven't done that yet. So the district court dismissed this without prejudice, which means show your harm, go back to court, and if you can convince the district court and a panel of this court that you have been harmed in the practice of your religion by this landmark designation, I feel certain you will prevail. Your Honor, the fact that there was a landmark designation with the surrounding circumstances that showed discrimination against this Islamic Center, it is harm in itself, it is harm as a violation of a First Amendment right. Mr. Muhammad, I'm sure you're aware that sometimes parties have to jump through hoops in order to address certain legal issues. In order to get the real argument before the court. We have regularly in this court, counsel who come in and say, your honors, I know that the law of this circuit is such and that I will lose on this issue, but I am making this argument to this court so that I can preserve it to get it to the Supreme Court. This is a comparable situation. There may are certain hoops that the Islamic Center has to jump through in order to get to the district court, to have the district court decide the issues that the Islamic Center wants to have decided. In order to get those issues to this court, so this court can look at them and decide whether they are presented and whether the district court made a mistake. The Islamic Center could have done the same thing if there was no landmark designation, which was a zoning for religious institution without any burden, without any burden on the Islamic Center to go through any additional process. This was created in the middle of their application that did not exist. And again, this was a zoning for religious institution that was no landmark existed at the time to prevent the characteristic of an Islamic Center before. Thank you, your honors. Thank you. Thank you both. We'll reserve decision.